UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JUSTIN MOORE** | * | **CIVIL ACTION** |
| | | NO. 2:19-cv-01592 |
| **Plaintiff** | * | |
| | | |
| **VERSUS** | * | **JUDGE** |
| | | **BARRY W. ASHE** |
| **CENTRALIZED MANAGEMENT** | * | |
| **SERVICES, LLC and EPISODE** | | **MAGISTRATE JUDGE** |
| **SOLUTIONS, LLC** | * | **DANA DOUGLAS** |
| | | |
| **Defendant** | * | |

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of Louisiana, Defendants, Centralized Management Services, LLC ("CMS") and Episode Solutions, LLC ("Episode") (collectively, "Defendants") file this statement of material facts as to which there is no genuine issue to be tried:

1. CMS hired Moore as the Regional Business Development Manager for the New Orleans market in August of 2017. While CMS was Moore's actual employer, he performed services for Episode, CMS' parent company.[1]

2. New Orleans was one of Episode's newer target markets in 2017 and as a result, the company only had one lead sales representative position designated to that region.[2]

3. The essential function of Moore's position at CMS was to help develop Episode's value-based healthcare payment programs by recruiting and fostering relationships with physicians and hospitals in the New Orleans market.[3]

---

[1] August 2, 2017 Offer Letter from CMS to Moore, signed by Moore on August 10, 2017, attached hereto as Exhibit A. *See also*, transcript of Moore's deposition taken December 3, 2019 ("Moore Dep."), at 81:14-23. A copy of cited excerpts from Moore's deposition are attached hereto *in globo* as Exhibit B.
[2] *Id.* at ¶ 7.

4. Although Moore's job afforded him some autonomy, he was still expected to report to and collaborate with the Vice President of Business Development for his region, Angela Jones, in developing and sustaining an active pipeline of surgeons and hospitals.[4]

5. At best, over the next two weeks, Moore tagged along to meetings Jones scheduled,[5] met with a few surgeons he knew personally and professionally;[6] spoke to three target surgeons at a school event because their daughters were friends;[7] had one meeting with a surgeon with whom he did not have a prior relationship;[8] and, sent out a handful of emails to doctors introducing himself.[9]

6. On Tuesday, September 19, 2017, Moore did not call, text, or email Jones, and her attempts to get in contact with him the following day also went unanswered until Moore called her late in the afternoon on Wednesday, September 20, 2017.[10]

7. In an email to Katie Schram, CMS's former Human Resources Consultant, Jones reported that during her Wednesday call with Moore, his speech was slurred and he was incoherent, so she asked him to call her in the morning.[11]

8. The next day, Moore sent Jones a text message at 8:14 a.m. telling her that his daughter was ill and he caught it as well.[12] Moore indicated that he would call Jones

---

[3] Exhibit B, Moore Dep. at 98:6-12.
[4] *Id*. at 75:24 – 76:9; 80:8-11.
[5] *See* Exhibit E, Tracker Email and Pipeline.
[6] Exhibit B, Moore Dep. at 128:14-20; 129:19 – 131:21; 150:2-10; 179:17 – 180:16. *See also*, *id.* at 132:16 – 133:20.
[7] *Id.* at 166:8-24.
[8] *Id.* at 145:6-18.
[9] *See* Exhibit E, Tracker Email and Pipeline.
[10] *See* Text Messages between Jones and Moore dated September 18 – 21, 2017 ("Jones Texts"), a true and correct copy of which is attached hereto as Exhibit F. *See also*, Declaration of Adrienne May dated January 1, 2020 ("May Declaration"), ¶ 4 attached hereto as Exhibit G.
[11] Email from Jones to Schram, copying Willis on September 22, 2017, Subject: Employee File and Next Steps ("Next Steps Email"), a true and correct copy of which is attached hereto as Exhibit H. *See also*, Exhibit C, Eadie Decl. ¶ 9.
[12] *See* Exhibit F, Jones Texts.

later in the day.[13] Moore did not call, text, or send any emails to Jones or anyone else at CMS the remainder of the day, missing scheduled conference calls.[14]

9. On Friday, September 22, 2017, Jones sent Moore an email laying out the expectation for the New Orleans market and requiring that Moore submit a report each day by 2:30 p.m. and call in each day at 3:00 p.m. to touch base, starting with that very day.[15] The afternoon came and went and Moore had not submitted a report of market updates nor did he otherwise call in to the scheduled meeting at 3:00 p.m., or submit a report of market updates.[16]

10. After Moore missed the required scheduled call, Jones contacted Schram to advise her of the performance and communication issues she and Willis had been experiencing with Moore, requesting guidance on next steps.[17]

11. Hours later, Moore finally responded to Willis' and Jones' string of unanswered emails, apologizing for being out of pocket and explaining that it was due to family issues.[18] Moore gave no indication that these family issues were in fact his relapse.[19]

12. On September 23, 2017, Moore sent Jones and Willis a report of market updates for the week.[20] His report did not reflect the "lots [of] progress" he contended he was making, a fact that he tacitly conceded in response to Willis' follow-up query as to

---

[13] *Id.*
[14] September 22, 2017 email string between Moore, Willis, and Jones re: NOLA ("NOLA Email"), a true and correct copy of which is attached hereto as Exhibit I. *See also*, Exhibit B, Moore Dep. at 137:1-9.
[15] Email from Jones to Moore on September 22, 2017 re: NOLA ("Daily Calls Email"), a true and correct copy of which is attached hereto as Exhibit J. *See also*, Exhibit C, Eadie Decl. ¶ 10.
[16] Exhibit I, NOLA Email.
[17] *See* Exhibit H, Next Steps Email.
[18] Exhibit I, NOLA Email.
[19] *Id.*; *see also,* Moore Dep. at 140:3 – 17.
[20] September 23-24, 2017 email string between Moore and Willis re: Update with attached report ("Updates Report"), a true and correct copy of which is attached hereto as Exhibit K. *See also*, Exhibit B, Moore Dep. at 140:20-25, 141:24 – 143:2.

3

the particular doctors Moore met with the prior week.[21] At this point, Jones emailed Willis stating that she found Moore's actions over the preceding few days to be "exactly in line with insubordination and should be reflective (sic) in a termination."[22]

13. Moore then missed a scheduled development conference call with Willis and Episode President and CEO, Tom Gallagher on Monday, September 25, 2017. This spawned a terse email from Willis, who advised Moore that it was "very important that [he] coordinate a call with [Jones] and [him]self" because Willis was "having a hard time understanding the work that was performed last week, combined with [Moore] missing the development call last week with [Jones], plus missing the development call with [Willis] and Tom [that day]."[23]

14. Moore emailed Willis and Jones on Tuesday morning, September 26, 2017, advising them both for the first time that he is a recovering alcoholic.[24] In his email, Moore also stated that he relapsed the week prior and was "taking the proper action."[25]

15. On November 1, 2017, Jones met with Moore in person to inform him of CMS's decision to terminate his employment.[26]

16. Willis and Schram attended the meeting via telephone.[27] Jones outlined three issues with Moore's performance that lead to his employment termination: (1) failing to circulate case volume reports, daily log reports, and pipeline development reports timely or at all; (2) not attending scheduled conference calls and missing calls from

---

[21] *See id.*
[22] September 23-24, 2017 email string between Moore, Willis, and Jones re: Update ("Insubordination Email"), a true and correct copy of which is attached hereto as Exhibit L. *See also*, Exhibit C, Eadie Decl. ¶ 11.
[23] September 25, 2017 email from Willis to Moore re: Coordinating a Call ("Coordinating a Call Email"), a true and correct copy of which is attached hereto as Exhibit M. *See also*, Exhibit B, Moore Dep. at 167:17-25.
[24] September 25, 2017 email from Moore to Willis, Jones, and Schram re: Explanation ("Explanation Email"), a true and correct copy of which is attached hereto as Exhibit N. *See also*, Exhibit B, Moore Dep. at 197:23 – 198:18.
[25] *Id.*
[26] Exhibit B, Moore Dep. at 204:2-5.
[27] *Id.* at 204:13-18.

physicians; and, (3) an unprofessional attitude and demeanor that at times verged on openly hostile.[28]

Respectfully submitted,

**ADAMS AND REESE, LLP**

/s/   Adrienne C. May
LAUREN T. TAFARO (#29320)
ADRIENNE C. MAY (#35037)
701 Poydras Street, Suite 4500
New Orleans, LA   70139
Telephone:  (504) 581-3234
Facsimile: (504) 566-0210
Email:  lauren.tafaro@arlaw.com
Email:  adrienne.may@arlaw.com

*Attorneys for Defendants*

---

[28] Termination Follow-Up memorandum authored by Moore ("Termination Follow Up Memo"), a true and correct copy of which is attached hereto as Exhibit O. *See also*, Exhibit B, Moore Dep. at 204:7-23.