# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JUSTIN MOORE** | * | **CIVIL ACTION** |
| | * | **NO. 2:19-cv-01592** |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | **JUDGE** |
| | * | **BARRY W. ASHE** |
| **CENTRALIZED MANAGEMENT** | * | |
| **SERVICES, LLC, ET AL** | * | |
| | * | **MAGISTRATE JUDGE** |
| *Defendants* | * | **DANA DOUGLAS** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, **JUSTIN MOORE,** who files this Memorandum in Opposition to the Motion for Summary Judgment filed by Defendants, **CENTRALIZED MANAGEMENT SERVICES, LLC ("CMS") and EPISODE SOLUTIONS, LLC ("EPISODE"),** and respectfully submits as follows:

## I.     FACTUAL BACKGROUND

The instant matter arises out of the wrongful termination of Justin Moore by CMS and Episode, just sixty-six (66) days after he began employment as Defendants' Regional Business Development Manager. Despite Moore's exceptional work towards growing Defendants' business, and despite no performance issues ever being raised to Moore prior to the actual meeting where he was terminated, Moore was fired days after he returned from inpatient treatment for his disease of alcoholism.

## II.    LAW AND ARGUMENT

### A.    Defendants' Motion for Summary Judgment is premature at this time.

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment filed in Federal Court.[1] This Court has previously held, in accordance with precedence set by the Supreme Court of the United States, that "[a]n entry of summary judgment should be granted only 'after adequate time for discovery.'"[2] Under Rule 56, "the moving party bears the initial burden of 'informing the district court of the basis for its motion, and identifying those positions of [the record] which it believes demonstrates the absence of a genuine issue of material fact.'"[3] If certain facts and information are not available to the nonmoving party at the time summary judgment is sought, subsection (d) of Rule 56 explicitly provides the nonmoving party with the opportunity to "move to deny or defer the motion for summary judgment on the grounds that additional discovery is needed to adequately respond."[4] When facts are unavailable to the nonmovant, Rule 56(d) permits the court to:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.[5]

Additionally, the United States Court of Appeal for the Fifth Circuit has held that "Rule 56(f) allows for further discovery to safeguard non-moving parties from summary judgment motions

---

[1] Fed. R. Civ. P. 56.
[2] *Smith Marine Towing Corp. v. EPL Oil & Gas, Inc.*, Civil Action No. 15-5492, 2016 WL 231096, at *1, *2 (E.D. La. Jan 19, 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))
[3] Fed. R. Civ. P. 56(c); *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322).
[4] Fed. R. Civ. P. 56(d); *Smith Marine Towing Corp.*, 2016 WL 231096, at *2 (quoting *Celotex Corp.*, 477 U.S. at 322).
[5] Fed. R. Civ. P. 56(d).

that they cannot adequately oppose."[6] Here, facts essential to justify Plaintiff's opposition to Defendants' instant Motion are unavailable either because depositions have been stalled by the Defendants or because there are outstanding discovery responses.

Plaintiff has been attempting to set the depositions of CMS and Episode employees and former employees since at least December 3, 2019.[7] Plaintiff again followed up with opposing counsel on setting depositions on December 13 and December 23, 2019.[8] These discussions have been ongoing to date, and Plaintiff only got defense counsel's availability for depositions on **January 3, 2020**.[9] Even having defense counsel's availability, Plaintiff still cannot set the depositions of Tom Gallagher, CEO of CMS, and Hutton Eadie, internal legal counsel to CMS, because Defendants have still not provided their availability, even after at least **four requests** have been made.[10] These depositions are crucial to the facts of Plaintiff's case, and as a result, summary judgment is premature at this stage. There is currently a Motion to Compel pending concerning the lack of Defendants timely providing witnesses for deposition.[11]

Further, there are outstanding emails which are critically important evidence that have not been produced in discovery. In Plaintiff's first set of requests for production, he sought numerous email communications, including those between Plaintiff and Defendants, Plaintiff and Tom Gallagher, Plaintiff and Angela Jones, Plaintiff and Katie Schram, Plaintiff and Vail Willis, and Plaintiff and Hutton Eadie.[12] Defendants produced approximately sixty (60) pages of email

---

[6] *Culwell v. City of Fort Worth*, 468 F. 3d 868, 871 (5th Cir. 2006) (citing *Washington v. Allstate Ins. Co.*, 901 F. 2d 1281, 1285 (5th Cir. 1990); *see also Smith Marine Towing Corp.*, 2016 WL 231096, at *2 (quoting *Culwell*, 468 F. 3d at 871); *see e.g.*, Fed. R. Civ. P. 56(f).
[7] *See* Email from David Vicknair to Adrienne May, dated December 3, 2019 ("Exhibit A").
[8] *See* Email from Adrienne May to David Vicknair, dated December 13, 2019 ("Exhibit B"). *Also see* Email from David Vicknair to Adrienne May, dated December 23, 2019 ("Exhibit C").
[9] *See* Email from Adrienne May to David Vicknair, dated January 3, 2020 ("Exhibit D").
[10] *See* Exhibits A, B, C, and D.
[11] R. Doc. 16.
[12] *See* Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions ("Exhibit E")

communications. However, Plaintiff testified in his deposition that there are many email communications that have not been produced.[13] Counsel for Plaintiff and counsel for Defendants had a Rule 37 conference on December 3, 2019. To date, no additional emails have been produced. Defense counsel certified they are working on ensuring full production and additional written discovery was issued to specifically ensure the native files and metadata was produced. The above mentioned pending Motion to Compel, seeking the production of both the outstanding emails, metadata, and the dates of Tom Gallagher and Hutton Eadie's availability for deposition, is focused on production of these pertinent fact witnesses and evidence.

Further, since the Rule 37 conference, Plaintiff issued additional discovery, once again requesting all email correspondence between the parties and their employees, to be produced in their native format inclusive of metadata.[14] Those responses to discovery are not due until January 17, 2020, and despite the Rule 37 conference and prior discovery requesting these documents, they have still not been produced. Thus, for all the foregoing reasons, to grant summary judgment at this time would be premature.

Plaintiff submits that the anticipated testimony in the upcoming fact depositions, corporate depositions, along with the email exchanges that have yet to be produced, will be essential to Plaintiffs' case and opposition to any dispositive motion. As a result, the instant motion should be denied, or at least deferred, pursuant to Rule 56(d) based on prematurity.

---

[13] *See* Deposition of Justin Moore at 109:25 – 110:11; 112:19 – 113:19; 166:25 – 167:6; 209:12-16; 209:21 – 210:2 ("Exhibit F").
[14] *See* Plaintiff's Second Set of Interrogatories and Requests for Production of Documents ("Exhibit G").

**B. If Defendants' Motion for Summary Judgment is not premature, it should nevertheless be denied because genuinely disputed material facts exist in the record.**

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[15] A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.[16] In analyzing the parties' evidence, the district court must view the facts and the inferences to be drawn from those facts in the light most favorable to the non-movant.[17] However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" are for trial, not for summary judgment.[18] "Although summary judgment is a useful device, it must be used cautiously, or it may lead to drastic and lethal results."[19] **Summary judgment is often inappropriate where issues involving inferences of intent and motive, largely factual questions, are important to the ultimate issues in the case.**[20]

Defendants filed the instant Motion for Summary Judgment seeking dismissal of various claims asserted by Plaintiff. In their Motion, Defendants posit the following arguments relating to Plaintiffs' claims for damages: (1) Moore cannot establish a *prima facie* case of discrimination under the ADA; (2) Defendants had a legitimate, non-discriminatory reason for terminating Moore's employment; (3) There is no evidence of pretext or that Moore's alcoholism motivated Defendants' decision to terminate his employment with CMS; and (4) Moore does not have a

---

[15] Fed. R. Civ. P. 56(c).
[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[17] *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Herrera v. Millsap*, 862 F. 2d 1157, 1159 (5th Cir. 1989).
[18] *Anderson*, 477 U.S. at 255.
[19] *Murrell v. Bennett*, 615 F. 2d 306, 309 (5th Cir. 1980).
[20] *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1893).

cognizable failure to accommodate claim. Each of Defendants' arguments will be addressed in turn below.

**1. Genuine issues of material fact exist in the record regarding the issue of whether Moore suffered a disability and whether Moore was terminated on account of his alcoholism.**

   a. Moore's status as an alcoholic substantially limited his major life activities when he was terminated.

Defendants first assert that Moore cannot show that he suffers from a disability protected under the ADA. Specifically, Defendants claim that Moore's status as a recovering alcoholic did not substantially limit him in a major life activity when he was terminated from CMS, and therefore does not qualify as a disability that is protected by the ADA.

Major life activities can include caring for oneself, sleeping, walking, and working.[21] Pursuant to Moore's declaration,[22] when he is in relapse, he drinks excessive amounts of alcohol, every day, from dawn to dusk.[23] In this state, Moore is unable to perform the requirements of his job as an orthopedic implant coordinator.[24] For instance, he cannot drive.[25] He cannot communicate with physicians, hospital managers, or hospital owners.[26] He is unable to physically function in an Operating Room alongside the doctors who employ the services of CMS/Episode.[27] All of the previous mentioned activities have been determined by the legislature be a major life activity which would qualify Moore's status as a recovering alcoholic to be a disability.[28]

---

[21] 42 U.S.C. § 12102(2)(A); *Ames v. Home Depot U.S.A., Inc.*, 629 F. 3d 665, 670 (7th Cir. 2011).
[22] Declaration of Justin Moore ("Exhibit H").
[23] *Id*. at ¶ 3.
[24] *Id*. at ¶ 5.
[25] *Id*.
[26] *Id*. at ¶¶ 5, 7.
[27] *Id*. at ¶¶ 5-6.
[28] 42 U.S.C. § 12102(2) ("For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.").

Defense counsel suggests that because Moore testified in his deposition that he has never been unable to shop for food or clothes when he relapsed, and has been able to care for himself, that he is not limited in a major life activity. The relevant portions of Moore's deposition testimony are as follows:

> Q. How does your alcoholism affect your daily activities when you have relapsed?
>
> A. When I'm drinking, it makes me unmotivated. It makes me depressed. It makes me shameful and guilty and unproductive.
>
> Q. Are you able to care for yourself during those times?
>
> A. Yes
>
> Q. Are you able to engage in physical activity?
>
> A. Limited.
>
> Q. Okay. Have you ever been unable to shop for food or clothes?
>
> A. No.[29]

Defendants also argue that Moore's ability to work and earn a living was not impacted. This is a mischaracterization of the question posed as well as the nature of Moore's history and details of alcoholism episodes. Moore was asked:

> Q. So while, I guess, you were at Intuitive and the same with towards the end of your employment at Entellus Medical, did you ever feel like your drinking interfered with your work?
>
> A. No. Uh-uh (negative response).[30]

---

[29] *See* Deposition of Justin Moore at 20:13 – 21:1 ("Exhibit F").
[30] *Id.* at 25:19-24.

Importantly, Moore was not diagnosed as suffering from alcoholism when he was employed by Intuitive, nor was he diagnosed with alcoholism when he was employed by Entellus Medical.[31] He was not diagnosed until March 2017, when he went through his first stint of rehabilitation following his employment at Entellus Medical.[32] In this instance, Moore sought help for his disability *before* it had the ability to impact his work. As he testified at his deposition, he sought to take a leave of absence at Entellus in order to attend inpatient treatment, but was told his position would have to be filled in his absence and his job would not be available upon his return.[33] At CMS/Episode, when Moore relapsed into another alcohol binge and his ability to perform the duties of his job was going to be affected, he sought immediate help by going back into rehabilitation and reporting his relapse to human resources.

The above portions of Moore's deposition testimony constitute the extent of questions asked by opposing counsel pertaining to Moore's limitations when he is drinking. The law encompasses more than just one's ability to work, care for himself, shop for food and clothes. Pursuant to 42 U.S.C. § 12102(2), "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." As Moore's declaration sets forth, he is unable to perform major life activities. Moore's declaration expounds upon his limitations when he is under the influence of alcohol in detail which was not explored in his deposition, truly discerning the time period, disability, and nature of his relapses when he is drinking.

---

[31] *Id.* at 26:3-24.
[32] *Id.* at 60:17 – 61:1.
[33] *Id.* at 61:5-9.

As the Court can see, when he is under the influence of alcohol, Moore cannot perform manual tasks required of his job, cannot effectively communicate, cannot travel, and cannot otherwise perform basic work functions.[34] The fact that he immediately sought rehabilitation treatment when he relapsed with CMS/Episode does not legally mean that his alcoholism does not affect his work. Rather, it means he immediately undertook to take the correct, appropriate step of recognizing his relapse, his disability, and the need for treatment. He immediately contacted Human Resources to facilitate rehabilitation therapy.

Moore's alcoholism has been such a problem that he has had to seek continuing treatment. He has and continues to go to Alcohol Anonymous meetings in attempts to treat his disease.[35] He testified in his deposition that he started to go to Alcohol Anonymous meetings in 2014 and still attends today, approximately five times per week.[36] Further, he first went to alcohol rehabilitation in March of 2017.[37] Since then, he has had to attend alcohol rehabilitation one additional time.[38]

Pursuant to 42 U.S.C. §12102(2)(A), the limitations set out by Moore in his declaration are major life activities that qualify Moore as a recovering alcoholic protected by the ADA. As such, Moore can demonstrate that his alcoholism substantially limited his major life activities when he was terminated, and summary judgment must be denied. In *Ariza v. Loomis Armored US, LLC*, the Middle District of Louisiana observed that a plaintiff need not prove his disability on summary judgment.[39] The Court noted that "Defendant confuses the distinction between the making of a *prima facie* case, as Plaintiff certainly must do, and the proving of such a case, which Plaintiff need not yet do."[40] Here, just as in *Ariza*, the record need not "prove" the matter, only point to

---

[34] Exhibit H ¶¶ 3-7.
[35] Deposition of Justin Moore at 27:15-20 ("Exhibit F").
[36] *Id*.
[37] Exhibit H ¶ 8.
[38] Exhibit H ¶ 9.
[39] 132 F. Supp. 3d 775, 791 (M.D. La. 2015).
[40] *Id*.

issues of material fact.[41] Moore has done so by way of his Declaration, as a trier of fact could find that his alcoholism substantially limited his major life activities.

Defendants also suggest that Moore cannot prove that Defendants regard him as having an impairment that limits one or more major life activities. Pursuant to case law, Moore can be regarding as having an impairment if he "(1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment."[42] The text messages between Moore and Katie Schram ("Schram"), Defendants' Human Resources Consultant, indicate that CMS and Episode believed Moore to be in a protected class as a result of his disease. Schram specifically asked Moore for "some sort of doctor's note or documentation" from treatment, and indicated that she needed it for his file "to substantiate [his] ADA claim for [his] protection."[43] She further indicated that "[r]ecovering alcoholics seeking help are a protected class by the ADA."[44] Furthermore, Moore's declaration establishes that Ms. Schram acknowledged his alcoholism.[45] This evidence establishes that Defendants perceived alcoholism as constituting a substantially limiting impairment or that Moore had an impairment because of the attitude of Defendants' towards his disease, their acknowledgement of his disease, and their acknowledgement that he was a protected class within the ADA due to his disease.

---

[41] *Id*.
[42] *Burch v. Coca-Cola Co.,* 119 F. 3d 305, 322 (5th Cir. 1997) (citing *Bridges v. City of Bossier,* 92 F. 3d 329, 332 (5th Cir.1996) (citing *Dutcher,* 53 F. 3d at 727–28 n. 19), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L. Ed. 2d 715 (1997)).
[43] *See* Text messages between Katie Schram and Justin Moore ("Exhibit I").
[44] *Id*.
[45] Exhibit H ¶ 11.

Even if this Court were to find that the text message exchanges between Moore and Schram and his statements regarding what Ms. Schram told him do not demonstrate that Defendants perceived Moore's alcoholism to substantially limited impairment, summary judgment would be inappropriate at this stage because Moore should be allowed an opportunity to take the depositions of Defendants' corporate representative(s) and employees in order to establish whether Moore was regarded by Defendants as having a substantially limiting impairment. Because Moore has not had an opportunity to do so at this time, as explained above, summary judgment should be denied.

      b.  <u>Moore can show that he was subject to an adverse employment decision on account of his alcoholism</u>

Defendants assert that Moore cannot show that his employment with CMS was terminated on account of his alcoholism. They cite to email correspondence in support of their position that Moore's termination was based on his poor work performance, claiming to have discussed these supposed performance issues before Moore's termination, and submitting these emails as evidence that Moore was terminated for his inadequate work and nothing else. It is incredibly important to note that **the first email communication** referencing this alleged poor performance is dated September 22, 2017, **the same day that Moore reached out to HR representative Katie Schram** seeking advice on the best course of action regarding his alcoholism.[46] Before that date, there is no evidence that Moore's work was deficient. On the contrary, Moore testified in his deposition that he only received emails and text messages praising his work.[47] Unfortunately, due to Defendants failure to disclose the requested emails to date nor metadata disclosing when these emails were actually created, Plaintiff is unable to support these claims at this time with any further evidence. For this reason alone, summary judgment is inappropriate.

---

[46] *See* Email from Katie Schram to Angie Jones, dated September 26, 2017 ("<u>Exhibit J</u>").
[47] *See* Deposition of Justin Moore at 174:14-15; 173:6-11; 173:12-13; 203:25; 206:7-8; 220:3-9; 154:2-10; ("<u>Exhibit F</u>").

Furthermore, the CMS's employee handbook sets forth very clear and specific rules for discipline of an employee when his performance or conduct is unsatisfactory.[48] Entitled "Progressive Discipline," the employee handbook sets forth that for a first offense, an employee will be given a verbal warning; for a second offense, an employee will be given a written warning with a plan of correction; for a third offense, the employee will be suspended or terminated.[49] Despite these disciplinary procedures set out in Defendants' own policies and procedures, Defendants immediately, on the day which Moore reported his alcoholism to Human Resources, subverted their very own policies and procedures when it came to Moore and immediately qualified him as a candidate for termination. This documentation was clearly created by CMS/Episode to have a plausible basis for termination to argue that Moore was not terminated for his alcoholism.

Moore testified in his deposition, "I never heard a single word of a performance issue my entire time there."[50] To the contrary, "[i]t was nothing but praise."[51] If Moore's termination was, as Defendants claim, due to performance issues, and not due to the fact that Moore was suffering from the disease of alcoholism, why was he not given any verbal warning or written warning with a plan of correction per the Defendants' own policies and procedures? Moreover, upon his firing, Defendants were unable to give Moore any examples of these alleged performance issues.[52] Only after Moore's termination did Defendants cite vague reasons for Moore's termination.[53]

---

[48] *See* Centralized Management Services Employee Handbook, pp. 17-18 ("Exhibit K").
[49] *Id*. at p. 18.
[50] *See* Deposition of Justin Moore at 174:13-14; 173:13-14; 203:21-23; 206:9-14; 154:8-10 ("Exhibit F").
[51] *Id*. at 174:14-15; 173:12-13; 203:25; 206:7-8; 220:3-9; 154:2-10; 173:6-11.
[52] *Id*. at 174:16-19; 207:8-11.
[53] *Id*. at 204:19 – 205:3; 206:24 – 207:3.

The foregoing evidence creates genuine issues of material fact regarding whether Moore's employment with CMS was terminated on account of his alcoholism. As such, summary judgment is inappropriate.

### 2. There is a genuine issue of material fact regarding whether Defendants had a legitimate, non-discriminatory reason for terminating Moore's employment.

Defendants assert that Moore's poor work performance gives them a legitimate, non-discriminatory reason for terminating him, citing emails that were conveniently sent the day when Moore reached out to Katie Schram to disclose that he had a disability for which he was seeking treatment. Defendants claim that the paper trail demonstrates Moore's faulty work performance, justifying his termination, and suggest that Moore cannot present evidence to the contrary.

Moore can demonstrate that there are genuine issues of material fact regarding whether Defendants had a legitimate, non-discriminatory reason for termination his employment. For example, in Defendants' Exhibit L, an email from Angie Jones ("Jones") to Vail Willis ("Willis"), Jones claims on the day Moore disclosed his disability to human resources that Moore "did nothing last week." However, Moore testified at his deposition that he sent the updates that were requested of him on that exact week.[54] The updates disclosed the work he had done that week.[55] The evidence shows that Defendants' contention that Moore "did not work last week" was completely fabricated. After a review of this evidence, a trier of fact could easily determine that Defendants sent the emails criticizing Moore's work in order to falsely paint his work as insufficient to justify his wrongful termination, which was patently based upon his disclosed alcoholism. As such, summary judgment is inappropriate.

---

[54] *Id.* at 207:23 – 208:5.
[55] *Id.*

Further, in claiming that they had a legitimate, non-discriminatory reason for terminating Moore, Defendants cite *Burton v. Freescale Semiconductor, Inc.* for the proposition that discharging an employee for poor work performance is adequate when coupled with specific examples.[56] Defendants appear to claim that they gave Moore specific examples of why he was terminated, and because those reasons amount to unsatisfactory performance according to management's business judgment, they are off the hook for wrongfully terminating Moore. Importantly, in *Burton*, the Court specifically determined that it "must discard any purported reasons for terminating Burton that the decisionmaker uncovered only *after* reaching the decision to terminate.[57] The Court further determined that it would "consider only pre-decision examples of alleged poor work performance."[58] In other words, the Court found that Burton's termination was only justified because of the initial performance reviews in which Burton received negative feedback. Specifically,

Freescale provides the following specific examples:

• In an October 2009 performance review, Burton received critical work assessments arguably amounting to evidence of poor work performance.

• A subsequent performance review indicating Burton had "snapped at" a trainer," and "tend[ed] to wander out of the work area."

• In January of 2011, Burton broke a wafer.

• On June 28, 2011, Burton used the Internet while at work.

• As reflected by Burton's final performance review and in e-mails dated in July, between April and June of 2011, Burton improperly leaned on workstations, failed to keep her nose covered, failed to escalate issues, and failed to proactively complete tasks absent direction.[59]

---

[56] *Burton v. Freescale Semiconductor, Inc.*, 798 F. 3d 222 (5th Cir. 2015).
[57] *Id*. at 232 (citing *Patrick v. Ridge*, 394 F. 3d 311, 318-20 (5th Cir. 2004).
[58] *Id*. at 231 (citing *Patrick v. Ridge*, 394 F. 3d 311, 318-20 (5th Cir. 2004).
[59] *Id*. at 231.

In *Burton*, the Court relied on these specific examples as justification for the termination because they were previously documented, specific performance issues. However, the Court rejected any examples of poor performance that came to the knowledge of the employer after the decision to terminate.[60]

Here, the evidence shows that Moore's "poor work performance" was "uncovered" only after Defendants took steps to retrospectively justify the termination decision once Moore disclosed his alcoholism to Human Resources. There were **no previously documented examples** of Moore's alleged poor work performance. The only examples cited by Defendants were presented to Moore *after* he was terminated by Angie Jones, after he returned from alcohol rehabilitation.[61] In the meeting with Jones, when Moore asked what the reason for termination was, Moore was told that it was not up for discussion.[62] Only after his termination did Moore learn for the first time of the alleged performance issues, which had never been brought to his attention prior or documented with him.[63] The three reasons given for his termination were missing calls and meetings, not turning in reports, and poor demeanor in front of customers.[64] However, when asked for specific examples, Willis and Schram could not give any, simply explaining that "that is what was reported."[65] Of the reasons for termination that are documented, none were documented until after Moore reached out to Schram to disclose his disability on September 22, 2017.[66]

In discovery, Defendants produced a document entitled "Justin Moore – 30 day New Hire Performance Evaluation/Timeline" which is a five page informal document that **is neither signed**

---

[60] *Id.* at 232 (The court rejected certain reasons for termination where "[t]he evidence shows these incidents were uncovered only after Akroyd took steps to retrospectively justify the termination decision")
[61] *See* Deposition of Justin Moore at 204:13-18 ("Exhibit F").
[62] *Id.* at 204:13-14; 207:8-11; 223:9-12. *Also see* "Justin Moore - Separation Notes" ("Exhibit L").
[63] *Id.* at 174:13-14; 173:13-14; 203:21-23; 204:13-18; 206:9-14; 154:8-10.
[64] *Id.* at 204:19-22.
[65] *Id.* at 204:22 – 205:2.
[66] *See* email from Angie Jones to Katie Schram, dated September 22, 2017 ("Exhibit M").

**nor dated**.[67] This document was never presented to Moore prior to his termination, nor at the time of his termination. It was seen for the first time during discovery. Plaintiff is entitled to depose Defendants and find out the origins of this document and ensure that it was not created after Moore's termination to fabricate another justification for termination other than his alcoholism. Plaintiff should also be able to depose Moore's supervisors and question them regarding their allegations of his poor work performance. Additionally, Plaintiff should be able to depose Moore's supervisors in order to question them regarding when Schram disclosed Moore's disability to them. As such, Plaintiff again submits that summary judgment is premature because he should be permitted to complete discovery in order to properly defend the instant Motion for Summary Judgment.

For the foregoing reasons, and pursuant to the case law, there are genuine issues of material fact surrounding whether Defendants had a legitimate, non-discriminatory reasons for terminating Moore's employment, and summary judgment should be denied.

3. **There is a genuine issue of material fact regarding whether Defendants' reasons for termination of Moore was pretext or mixed-motive.**

Defendants submit that Moore must show that Defendants' proffered reasons for his termination were false and posit that Moore cannot do so, citing *Laxton v. Gap, Inc*. Moore has already offered sufficient evidence that demonstrates how a fact finder could find that Defendants' explanations for terminating Moore are unworthy of credence and that Defendants did not have a legitimate, non-discriminatory reason for terminating him.

Importantly, in *Laxton*, the Court, when looking at whether the employer's proffered reason for termination was pretext, <u>determined that it was an issue for the jury to decide based on the</u>

---

[67] Exhibit N.

competing evidence, some of which showed that certain alleged violations involved arguably authorized conduct while others were shown to be false, or at least could have been found by a jury to be false.[68]

Similarly, Moore has submitted evidence to this Court that demonstrates Defendants' explanations for his termination are false or unworthy of credence.[69] Among these reasons are (1) the timing of his firing upon his immediate return from alcohol rehabilitation, (2) the sudden issue of his work performance raised by Angie Jones in an email to Vail Willis "dated" the day he reported his disability to Schram, (3) the fact that he was fired with no prior complaints or discipline ever being raised by management, (4) the fact that he was fired without CMS/Episode following any of its own policies and procedures for employee rehabilitation prior to termination, and (5) the fact that the reasons given for his firing were not only vague, but did not arise until after he was terminated and were never communicated to him prior to his termination. All these reasons give rise to pretext, and more importantly, credibility determinations on whether the witnesses are being truthful or lying, and it is up to a trier of fact to determine whether Defendants' proffered justifications are credible, or whether the decision to terminate Moore was made with discriminatory motive.[70] Such credibility determinations are not appropriate on summary judgment.

Throughout their memorandum, Defendants repeatedly call Moore's belief that he was fired after his return from rehab "subjective" and advance that he has no evidence that his performance issues were a pretext for disability discrimination, but the fact remains that Moore's performance was never a problem prior to his disclosure of his disability to Human Resources.

---

[68] *Laxton v. Gap Inc.*, 333 F. 3d 572 (5th Cir. 2003).
[69] *See* argument for subsection 2, *supra*, as if copied here *in extenso*.
[70] *See Laxton,* 333 F. 3d 572.

Such accusations also overlook the fact that Defendants did not raise specific complaints with Moore's performance until *after* Moore was terminated, **in violation of the law pursuant to** ***Burton***. Plaintiff does have evidence and will be able to prove, especially after an opportunity for adequate discovery, either (1) that Defendants' claim that Moore was fired because of poor work performance is pretext, or (2) that Defendants' claim that Moore was fired because of poor work performance is a mixture of their legitimate, non-discriminatory reasons and their discrimination against Moore because of his disease of alcoholism. For these reasons, summary judgment is inappropriate at this time and must be denied.

### 4. Plaintiff has not made a failure to accommodate claim.

Plaintiff is not making a failure to accommodate claim. Therefore, this portion of the Motion for Summary Judgment is moot.

### III. CONCLUSION

For the foregoing reasons, Plaintiff, **JUSTIN MOORE,** respectfully requests that this Honorable Court deny the Motion for Summary Judgment filed by Defendants, **CENTRALIZED MANAGEMENT SERVICES, LLC, and EPISODE SOLUTIONS, LLC**.

Respectfully submitted,

*/s/ David P. Vicknair*
David P. Vicknair, #34135
Hope Elizabeth Hughes, #35833
**Scott, Vicknair, Hair & Checki, LLC**
909 Poydras Street, Suite 1100
New Orleans, Louisiana 70112
T: (504) 684-5200
F: (504) 613-6351
david@svhclaw.com
hughes@svhclaw.com

- and –

Andre F. Toce, #
**The Toce Firm, APLC**
969 Coolidge Blvd.
Lafayette, LA 70503
(337) 233-6818 (Telephone)
(866) 306-9336 (Facsimile)
andre@toce.com

*Attorneys for Justin Moore*