UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JUSTIN MOORE** | * | **CIVIL ACTION** |
| | * | **NO. 2:19-cv-01592** |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | **JUDGE** |
| | * | **BARRY W. ASHE** |
| **CENTRALIZED MANAGEMENT** | * | |
| **SERVICES, LLC, ET AL** | * | |
| | * | **MAGISTRATE JUDGE** |
| *Defendants* | * | **DANA DOUGLAS** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF GENUINELY DISPUTED MATERIAL FACTS

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, **JUSTIN MOORE**, who files this statement of genuinely disputed material facts in opposition to the Motion for Summary Judgment filed by Defendants, **CENTRALIZED MANAGEMENT SERVICES, LLC ("CMS") AND EPISODE SOLUTIONS, LLC ("EPISODE"),** and respectfully submits as follows:

1. Discovery is ongoing and Plaintiff has been unable to obtain all of the requested emails as well as schedule and take the depositions of pertinent fact and expert witnesses, despite diligent efforts in written discovery and requests for depositions.[1]

2. Plaintiff's job duties at CMS/Episode were mainly to travel to hospitals and doctors' offices; communicate with them on how to be more efficient with the clinical pathways of their patients; convince them how CMS/Episode could provide quality orthopedic

---

[1] *See* R. Doc. 16.

implants packaged with assistance from me and the orthopedic implant representative in the operating room; and how to reduce costs.[2]

3. When he has relapsed and is in an alcohol binge, Plaintiff's alcoholism causes him to suffer major life activities, such as provide the aforementioned services.[3]

4. When he has relapsed and is in an alcohol binge, Plaintiff is also unable to perform the manual tasks required in an operating room and unable to effectively communicate as described above.[4]

5. Plaintiff's disability was acknowledged by Defendants.[5]

6. In order to develop the business and obtain clients for Defendants, Moore regularly met and communicated with physicians who would be potential clients (via in person meetings, text message and email), communicated with physicians' contacts and CEOs to establish relationships with various hospitals in order to gain their business, and participated in meetings scheduled by Angie Jones.[6]

7. In growing Defendants' business, obtaining a physician's interest is just one step that can amount to nothing if the hospital is not on board.[7] The hospitals often tell the physicians what they can and cannot do.[8] When it comes to the hospital, the Value Analysis Committee makes the determination as to whether they will use Defendants' services after many discussions.[9]

---

[2] *See* Declaration of Justin Moore at ¶ 4 ("Exhibit H").
[3] Exhibit H ¶ 5.
[4] Exhibit H ¶¶ 5-7.
[5] Exhibit H ¶ 11.
[6] *See* Tracker Email with Attachment ("Exhibit R"). *Also see* Deposition of Justin Moore at 149:18 – 167:16 ("Exhibit F").
[7] *See* Deposition of Justin Moore at 132:1 – 133:20 ("Exhibit F").
[8] *Id*.
[9] *Id*.

8. Part of the reason the growth of the business was slow is because Defendants had failed to pay the physicians they had done cases with their earned compensation ("reconciliations"), and because the physicians had not received their checks, they had no confidence in the Defendants' company.[10]

9. On Wednesday, September 20, 2017, Moore called Jones within an hour of receiving a text being asked to do so. Due to her mailbox being full, he called her a second time. Neither phone call was answered. This occurred in the early afternoon, between 1:00 and 2:00 p.m.[11]

10. Prior to his termination, Moore never heard anything negative about his performance.[12] Rather, he received praise and communications indicating pleasure with and confidence in his work.[13]

11. When Vail Willis asked for schedule of physician and hospital meetings that took place that week and a schedule of future meetings in an email dated September 21, 2017,[14] Moore understood the email to be directed at both him and Angie because that was always the case.[15]

12. Angie Jones told Moore that she would handle the spreadsheet for the call logs and that he need not worry about it.[16]

13. The email requests from Vail Willis and Angie Jones sent between September 22 and 26, 2017 requested information that had never been previously requested of Moore and

---

[10] *Id.* at 111:3-11; 112:3-18; 143:22 – 144:1; 156:20 – 157:19; 163:18 – 164:5; 210:17-22.
[11] *See* Text messages between Justin Moore and Angie Jones, dated September 20, 2017 ("Exhibit O").
[12] *See* Deposition of Justin Moore at 174:13-14; 173:13-14; 203:21-23; 206:9-14; 154:8-10 ("Exhibit F").
[13] *See* Text messages between Justin Moore and Angie Jones. ("Exhibit P"). *Also see* Deposition of Justin Moore at 174:14-15; 173:12-13; 203:25; 206:7-8; 220:3-9; 154:2-10; 173:6-11 ("Exhibit F").
[14] *See* Email from Vail Willis to Angie Jones and Justin Moore, dated September 21, 2019 ("Exhibit Q")
[15] *See* Deposition of Justin Moore at 137:1 – 138:9 ("Exhibit F").
[16] *See* Deposition of Justin Moore at 110:3-8; 146:9-16; 147:7-13; 209:12-25.

"coincidentally" were created on the same day Moore reported his alcoholism to Human Resources.[17]

14. Moore missed a development call on September 22, 2017, because he had relapsed the day before and had reached out to the human resources, Katie Schram, and was awaiting direction from her on how to handle disclosure of his disease and attending alcohol rehabilitation.[18]

15. Moore did not respond to Vail Willis' September 25, 2017 email because he had reached out to Defendants' human resources professional, Katie Schram, and was awaiting direction from her on how to handle disclosure of his disease.[19] However, **Moore did provide his market updates as requested on Saturday, September 23, 2017, prior to his disclosure of his relapse**.[20]

16. The first time Moore heard of performance issues was at the time of his firing on November 1, 2020. He received no prior criticism.[21]

17. When being terminated on November 1, 2017, Moore was not given any reasons for his termination by Jones.[22] He was not given reasons until after the meeting with Jones concluded and he was in his car on the phone with Vail Willis and Katie Schram.[23]

---

[17] *Id.* at 216:16-25.
[18] *Id.* at 169:5-24.
[19] *Id.* at 148:3-11; 167:23 – 168:7;
[20] *See* Email from Justin Moore to Vail Willis and Angie Jones dated September 23, 2017 ("Exhibit S"). *Also see* Deposition of Justin Moore at 168:18 – 169:4 ("Exhibit F").
[21] *See* Deposition of Justin Moore at 154:2-10; 174:13-15; 173:6-11; 173:12-14; 203:21-25; 206:7-14; 220:3-9 ("Exhibit F").
[22] *Id.* at 204:13 – 205:3; 206:24 – 207:11.
[23] *Id.*

Respectfully submitted,

*/s/ David P. Vicknair*_____
David P. Vicknair, #34135
Hope Elizabeth Hughes, #35833
**Scott, Vicknair, Hair & Checki, LLC**
909 Poydras Street, Suite 1100
New Orleans, Louisiana 70112
T: (504) 684-5200
F: (504) 613-6351
david@svhclaw.com
hughes@svhclaw.com

- and –

Andre F. Toce, #
**The Toce Firm, APLC**
969 Coolidge Blvd.
Lafayette, LA 70503
(337) 233-6818 (Telephone)
(866) 306-9336 (Facsimile)
andre@toce.com

*Attorneys for Justin Moore*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served upon all counsel of record on December 8, 2019.

*/s/ David P. Vicknair*_____
David P. Vicknair, Esq.