UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN MOORE | CIVIL ACTION |
| VERSUS | NO. 19-1592 |
| CENTRALIZED MANAGEMENT SERVICES, LLC and EPISODE SOLUTIONS, LLC | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion by defendants Centralized Management Services, LLC ("CMS") and Episode Solutions, LLC ("Episode") (collectively, "Defendants") for summary judgment[1] on plaintiff Justin Moore's disability discrimination claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, *et seq.*, as amended. Moore responds in opposition.[2] Both Defendants and Moore filed multiple replies in further support of their respective positions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants Defendants' motion because Moore has not demonstrated that he is a qualified individual under the ADA.

**I. BACKGROUND**

This case involves alleged employment discrimination against a recovering alcoholic based on his episodic binge drinking. Defendants develop and manage value-based payment structures for musculoskeletal care in partnership with surgeons and hospitals.[4] On August 28, 2017, Defendants hired Moore to work as an orthopedic implant coordinator.[5] From the beginning,

---

[1] R. Doc. 13.
[2] R. Doc. 17.
[3] R. Docs. 21, 27, 38 & 40.
[4] R. Doc. 13-1 at 1.
[5] R. Doc. 1 at 3.

Moore's performance was "lacking" because he "failed to put forth any genuine effort" to accelerate Defendants' business development in New Orleans, which was a core objective of his job.[6] Moore failed to schedule meetings and circulate reports in a timely fashion, failed to attend conference calls or answer client calls, and conducted himself in an unprofessional manner.[7] Moore attributes his lackluster job performance to a relapse of alcoholism. On September 25 or 26, 2017, Moore informed his supervisor he was an alcoholic and, although he had been in recovery for years, he had relapsed.[8]

Moore began treatment for his relapse on September 27, 2017.[9] While undergoing treatment, Moore periodically updated Defendants on his progress.[10] Moore completed his treatment on October 27, 2017, and informed Defendants that he was able to come back to work.[11] That same day, Defendants instructed Moore to forbear from contacting any clients and to speak to his supervisor before commencing anything work-related.[12] On November 1, 2017, Moore's supervisor informed him that Defendants were discharging him for poor performance.[13]

Moore brought this action for disability employment discrimination, alleging that Defendants terminated him from employment because of his alcoholism and because he sought treatment for the disease.[14] According to Moore, "Defendants made no individualized assessment to determine whether [he] could perform the essential functions of his job or whether a reasonable accommodation would enable him to be employed in his position, as required under the ADA."[15]

---

[6] R. Doc. 13-1 at 1.
[7] R. Doc. 17-3 at 1.
[8] R. Doc. 1 at 3-4.
[9] *Id.* at 4.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 5.
[15] *Id.*

Moore alleges that due to Defendants' actions, he "has suffered and will continue to suffer economic and non-economic harm."[16]

## II. PENDING MOTION

Defendants seek summary judgment on Moore's ADA discrimination claims, arguing that Moore "cannot meet his *prima facie* or ultimate burden of proof on critical aspects of his disparate treatment and failure-to-accommodate claims."[17] Specifically, Defendants argue that Moore cannot prove either that he qualifies as disabled under the ADA or that Defendants' legitimate, non-discriminatory reasons for terminating his employment were pretextual.[18] Moore responds that genuine issues of material fact preclude summary judgment.[19]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates

---

[16] *Id.*
[17] R. Doc. 13 at 1.
[18] *Id.*
[19] R. Docs. 17 at 4; 21 at 1-2. Moore additionally argues that summary judgment is inappropriate because Defendants' motion "should be denied, or at least deferred, pursuant to Rule 56(d) based on prematurity." R. Doc. 17 at 2-4. Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." To obtain relief under Rule 56(d), the party opposing summary judgment must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if aduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotation and citation omitted). Moore failed to explain specifically what he hopes to obtain from discovery and how those facts would affect the pending motion. Rather, Moore simply states that outstanding discovery and depositions may provide unspecified pertinent information. This statement is insufficient to carry Moore's burden under Rule 56(d). Therefore, the Court denies Moore's Rule 56(d) request as inadequate.

3

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when

4

both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Americans with Disabilities Act

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to ... discharge ...." 42 U.S.C. § 12112(a). To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability, or was regarded as disabled; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). If a plaintiff can establish a *prima facie* case of discrimination, "a presumption of discrimination arises," and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Thereafter, if the defendant meets its burden, the burden of production shifts back to the plaintiff to

>offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*LHC Grp.*, 773 F.3d at 702 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted); *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 640 (E.D. Tex. 2007) (applying this familiar *McDonnell Douglas* burden-shifting analysis to cases under the ADA)).

The term "disability" is defined under the ADA, "with respect to an individual," as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment ...." 42 U.S.C. § 12102(1). The phrase "substantially limits" is interpreted with respect to a person's ability "'to perform a major life activity as compared to most people in the general population.'" *Cannon*, 813 F.3d at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

The ADA's implementing regulations explain that the phrase "substantially limits" is broadly construed in favor of expansive coverage, but that whether an individual's "impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(i) & (iv). There are several types of impairments that "[g]iven their inherent nature

... will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." *Id.* § 1630.2(j)(3)(ii). However, "not all impairments are serious enough to be considered disabilities under the statute." *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 614 (5th Cir. 2001).

Alcoholism is not a disability *per se* under the ADA. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 859-60 (5th Cir. 1999); *Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 688 (M.D. La. 2013) ("[T]here is no *per se* rule that categorizes recovering alcoholics … as disabled."); *see also Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003) ("[N]either the Supreme Court nor [the Fifth Circuit] has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies."); *Kitchen v. BASF*, 343 F. Supp. 3d 681, 689 (S.D. Tex. 2018) ("[M]ere status as an alcoholic or substance abuser does not necessarily imply the requisite limitation for a disability determination.") (original brackets, internal quotation marks, and citation omitted). Thus, "[t]he ADA requires an individualized inquiry to determine whether a particular plaintiff is disabled" due to alcoholism. *Zenor*, 176 F.3d at 860 (citing *Burch*, 119 F.3d at 315), and this inquiry "centers on substantial limitation of major life activities, not mere impairment." *Waldrip*, 325 F.3d at 656 (quoting *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999)).

With all alleged disabilities, including alcoholism, "[p]ermanency, not frequency, is the touchstone of a substantially limiting impairment." *Burch*, 119 F.3d at 316. "Whether an impairment is substantially limiting depends on '(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term

7

impact.'" *Dupre*, 242 F.3d at 614 (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (citing 29 C.F.R. § 1630 app., § 1630.2(j))); *see Equal Emp't Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614-15 (5th Cir. 2009). "These factors indicate that a temporary impairment will generally not qualify as a disability under the ADA." *Hamilton v. Alston Wilkes Soc'y*, 2009 WL 778559, at *7 (D.S.C. Mar. 20, 2009). "An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Id*. "To 'hold that a person is disabled whenever that individual suffers from an occasional manifestation of an illness would expand the contours of the ADA beyond all bounds.'" *Id*. (quoting *Equal Emp't Opportunity Comm'n v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001)).

Moore cites "working" as the major life activity that is affected by his drinking. Generally, when "working" is the affected activity, a plaintiff must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Dutcher*, 53 F.3d at 727; *see Dupre*, 242 F.3d at 614. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dupre*, 242 F.3d 614 (quoting *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir. 1998) (internal quotation marks and citation omitted)); *see Dutcher*, 53 F.3d at 727. Likewise, "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." *Dutcher*, 53 F.3d at 727.

Moore has failed to establish that his alcoholism constitutes a disability under the ADA. Moore asserts that while in relapse, he cannot work because "he drinks excessive amounts of alcohol, every day, from dawn to dusk" and, in this state, he "is unable to perform the requirements

of his job as an orthopedic implant coordinator."[20] Moore claims that he cannot drive, communicate with medical professionals, or physically function in an operating room.[21] However, Moore testified in his deposition that at no time in his life has he ever been drinking alcohol every day.[22] Rather, he is a "binge drinker," and his episodic relapse that occurred from September 22 to September 25, 2017, does not satisfy the permanency requirement to constitute a substantially limiting impairment under the ADA. Moore's relapse, after being in recovery for years, is more akin to an "occasional manifestation" of his disease.

In *Felix v. Sun Microsystems, Inc.*, 2004 WL 911303 (D. Md. Apr. 12, 2004), the district court examined a similar situation where a recovering alcoholic brought a claim for employment discrimination under the ADA. The plaintiff (Donald) claimed that "when he is binge drinking, all of his major life activities are impaired, but when he is sober, his ability to perform everyday activities and to work is not limited." *Id*. at *9. The court highlighted that "the only times Donald's abilities are ever limited are during his binges," observing "that a person is not necessarily disabled every time he suffers from an occasional manifestation of an illness," *id*. at *10 (citing *Sara Lee Corp.*, 237 F.3d at 352), and that "in order to be considered a disability, the impact of the impairment must be long-term." *Id*. As the court explained:

> Donald has admitted that he has been quite successful in his career and consistently rated as an excellent worker. Not only did he perform well at Sun, but he also testified that things have been going very well at his current job with Lockheed Martin.
>
> Furthermore, no doctor or specialist testified that Donald is currently or was ever substantially limited in any major life activity. The only identifiable evidence of any effects on Donald's major life activities from his alcoholism are: his general statement in his EEOC form that all his activities were affected when he drank, Cheryl Green's statement that Donald told her he was "incapacitated" during his binges, and the few incidents that occurred in late 2000 when he missed

---

[20] R. Doc. 17 at 6.
[21] *Id.*
[22] R. Doc. 17-7 at 7-8.

> commitments, was unavailable, sounded incoherent on the phone, and was hospitalized. Given the relatively short period during which these events occurred, as well as the short duration of each incident, and the extremely long period of sobriety from 1989 to 1999/2000 and again from 2001 to the present, in which Donald's daily activities have not been limited at all by his alcoholism, Donald has simply not shown evidence of substantial limitation in any life activity sufficient to render him disabled under the ADA. While his performance may have been slightly affected in late 2000 because of his drinking, this alone is not sufficient to show he is unable or severely restricted from performing this job, let alone a wide range of jobs.

*Id.*; *see also Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1168-69 (1st Cir. 2002) (alcoholic who occasionally did not accept overtime assignments, was sent home one day after being found drunk at work, and was incarcerated due to his alcoholism, was not disabled under the ADA).

Moore, like the plaintiff in *Felix*, is only affected by his alcoholism during a binge or relapse. Moore also testified that he has been successful in his career and consistently praised for his work. No medical professional provided testimony that Moore has been substantially limited in a major life activity. Instead, Moore testified that when he is drinking, it makes him "unmotivated," "depressed," "shameful and guilty and unproductive," but he is still able to care for himself, shop for food, shop for clothing, and engage in "limited" physical activity.[23] These statements fail to demonstrate a major life activity that is substantially impaired. *See, e.g., Burch*, 119 F.3d at 316 (recovering alcoholic was not disabled under the ADA despite testimony "his ability to walk, talk, think, and sleep were affected when he drank too much" and that his morning hangovers "affected his memory," because his inebriation was only temporarily incapacitating); *Marionneaux v. Groendyke Transp., Inc.*, 170 F.3d 183, at *2-3 (5th Cir. 1999) (alcoholic suffering from delirium tremens who could walk, breathe, dress himself, and go to work, but was restricted in his everyday freedoms, was not disabled under the ADA). Moore's relapse was also of a

---

[23] R. Doc. 17-7 at 5-6.

relatively short duration. Thus, Moore has not demonstrated that he has a permanent disability, which is required for the ADA to apply.

Moreover, Moore neither addressed nor attempted to satisfy the requirement that he be disabled from a broad range of jobs. His declaration only expounds upon the duties required for his *specific* job as an orthopedic implant coordinator and how his alcoholism renders him unable to perform those *specific* duties. According to the Fifth Circuit, the inability to perform a single, particular job is insufficient to demonstrate a "substantial limitation" in the major life activity of "working" under the ADA. *See Dupre*, 242 F.3d 614; *Dutcher*, 53 F.3d at 727. Therefore, Moore has not sufficiently supported his claim that his alcoholism renders him substantially limited in the major life activity of working. *See Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 298 (5th Cir. 2012) ("Because [plaintiff's] complaint, even liberally construed, alleged only that she was, or was regarded as being, impaired in the performance of her specific job with UTSMC, her pleadings are legally insufficient.").

Additionally, "[t]he ADA explicitly allows an employer to 'hold an employee who ... is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the ... alcoholism of such employee.'" *Sullivan v. Neiman Marcus Grp., Inc.*, 358 F.3d 110, 116 (1st Cir. 2004) (quoting 42 U.S.C. § 12114(c)). "[T]he ADA specifically authorizes termination for misconduct that is caused by a disability in cases involving alcoholism ...." *Nanos v. City of Stamford*, 609 F. Supp. 2d 260, 265 (D. Conn. 2009) (citing 42 U.S.C. § 12114(c)(4)). "This statutory provision means that an employee who tries to use deficiencies in his job performance as evidence that alcoholism substantially impairs his ability to work is likely to establish the unhelpful proposition, for ADA coverage, that he cannot meet the legitimate requirements of the job."

*Sullivan*, 358 F.3d at 116. "In addition, '[p]ursuant to 42 U.S.C. § 12114(c)(4), employers need not make any reasonable accommodations for employees who are illegal drug users and alcoholics ... in marked contrast to all other disabilities, where the ADA does require that the employer extend reasonable accommodations.'" *Nanos*, 609 F. Supp. 2d at 265 (quoting *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1086 (10th Cir. 1997)).

In *Nanos*, the court applied § 12114(c)(4) to dismiss the employee's ADA claim, holding that, even if she was terminated because her alcoholism prevented her from regularly attending work, her employer was holding her to the "same standards for employment or job performance and behavior" as other employees. The court reasoned:

> There is no dispute that alcoholism may constitute an impairment for the purposes of the ADA, or that Nanos suffers from alcoholism. In addition, under the ADA, the disability must substantially limit a "major life activity," *see* 42 U.S.C. § 12102(1), which includes the activity of "working," *see* 29 C.F.R. § 1630.2(i). That being said, … the ADA expressly precludes alcoholics from recovery in circumstances where their alcoholism prevented them from performing their job duties to the same standards as non-alcoholics, nor does it protect alcoholics from termination for misconduct caused by alcoholism.

609 F. Supp. 2d at 265-66; *see Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670-71 (7th Cir. 2011) (court held that employer "need not accommodate an alcoholic by overlooking such violations of workplace rules" after plaintiff failed to meet employer's "legitimate expectations for its employees") (citing 42 U.S.C. § 12114(c)(4)).

Defendants terminated Moore for poor performance. Moore failed to schedule meetings and circulate reports in a timely fashion, failed to attend conference calls or answer client calls, and conducted himself in an unprofessional manner. Moore's behavior deviated from Defendants' legitimate expectations for an employee in his position. It is of no moment that Moore's transgressions were caused by an alcoholic relapse because a non-alcoholic employee would have been terminated for the same behavior. The ADA does not protect alcoholics from failing to

12

perform their jobs, even if such failure is caused by alcoholism.  It would be untenable to expect an employer to retain an employee who fails to meet reasonable employment expectations simply because that employee's substandard conduct resulted from alcoholism.  Thus, Defendants were within their rights to terminate Moore for his poor job performance.

Although Moore has not proved that he has a qualifying disability, he may yet establish a *prima facie* claim under the ADA by demonstrating that Defendants regarded him as disabled. "One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Burch*, 119 F.3d at 322 (quoting *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)); *see Zenor*, 176 F.3d at 859; *Dupre*, 242 F.3d at 616.  "Additionally, [the plaintiff] must establish that the impairment, if it existed as perceived, would be substantially limiting." *Dupre*, 242 F.3d at 616 (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000)).

For example, in the case of a drug addict, "the fact that a person is perceived to be a drug addict does not necessarily mean that person is perceived to be disabled under the ADA," but he "must also show that [the employer] regarded [his] addiction as substantially limiting one of [his] major life activities." *Zenor*, 176 F.3d at 859.  "[A]n employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes the employee is incapable of performing a particular job." *Dupre*, 242 F.3d at 616 (citing *Deas v. River West, L.P.*, 152 F.3d 471, 480 (5th Cir. 1998)).  "[I]n order for an employer to have regarded an impairment as substantially limiting in the activity of working, the employer must regard an

individual as significantly restricted in the ability to perform a class or a broad range of jobs." *Burch*, 119 F.3d at 322 (citing *City of Bossier*, 92 F.3d at 332); *see Zenor*, 176 F.3d at 860 ("In this context, the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.") (original brackets and citations omitted)). "This demonstration generally requires the introduction of evidence on the 'accessible geographic area, the numbers and types of jobs in the area foreclosed due to the impairment, and the types of training, skills, and abilities required by the jobs.'" *Sullivan*, 358 F.3d at 116 (quoting *Bailey*, 306 F.3d at 1168). Further, the plaintiff "must also show that he is not just temporarily precluded from those jobs; he must show that the impact of his impairment is permanent or at least that it is long term." *Sullivan*, 358 F.3d at 116 (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002)).

According to Defendants, "Moore does not contend ... that Defendants regarded him as having … an impairment [that substantially limits one or more major life activities]."[24] However, in his opposition memorandum, Moore asserts that certain text messages between Moore and Defendants' human resources consultant, Katie Schram, "indicate that [Defendants] believed Moore to be in a protected class as a result of his disease."[25] In the exchange, Schram asks Moore for documentation of his treatment to substantiate his ADA claim and states that she believes recovering alcoholics seeking treatment are protected by the ADA.[26]

Moore's argument is unavailing. Schram's statements in the text messages do not prove that Defendants regarded Moore as disabled. There is nothing in them indicating that Defendants

---

[24] R. Doc. 13-1 at 12.
[25] R. Doc 17 at 10.
[26] R. Doc. 17-10.

14

perceived Moore as having a substantial limitation as that term is understood under the ADA. Rather, these text messages acknowledge only that Moore is seeking protection under the ADA and belie the non-lawyer Schram's incomplete comprehension of the law regarding whether alcoholism is a disability under the ADA.

This case is similar to *Kitchen v. BASF*, where the plaintiff, a recovering alcoholic, failed to allege that his alcoholism impaired a major life activity at the time of his termination. 343 F. Supp. 3d at 689. The court explained:

> Kitchen argues that he was "regarded by [BASF] as having a disability" because BASF knew he was [a] recovering alcoholic, allowed him to participate in an Employee Assistance Program, and required him to submit to alcohol tests. ... If the Court accepts Kitchen's theory, "every employee ever subjected to alcohol testing or placed on leave for drinking at work necessarily would be disabled under the statute." ... That is an absurd result that finds no support in the case law. In truth, it is black-letter law that Kitchen's "burden under the ADA is not satisfied merely by showing that [BASF] regarded him as a[n alcoholic]: the fact that a person is perceived to be a[n alcoholic] does not necessarily mean that person is perceived to be disabled under the ADA."

*Id.* (quoting *Zenor*, 176 F.3d at 859).

Schram's text messages do not indicate in any way that Defendants regarded Moore's alcoholism as a substantially limiting impairment. And Moore has not presented any other relevant evidence proving that Defendants regarded him as having a substantially limiting impairment. As in *Burch*, the record here is "silent as to any conception or misconception," held by Defendants "that alcoholism, alone, renders an alcoholic employee substantially impaired." 119 F.3d at 323; *see also Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 767 (S.D. Tex. 2001) ("[W]hile [the plaintiff-employee] may have been regarded as an alcoholic, there is no evidence that management misperceived [him] as being substantially limited in a major life activity."). Indeed, the fact that Defendants responded favorably to Moore's request for leave to enter a recovery program to address his relapse "weighs in favor of the opposite conclusion." *Burch*, 119 F.3d at 323.

In addition, Moore's current situation is strikingly similar to the plaintiff in *Sullivan v. Neiman Marcus Group, Inc.*, in which the First Circuit held that the plaintiff "failed to present any evidence beyond his own termination demonstrating that [the employer] may have believed that he could not perform the essential functions of either a class of jobs or a broad range of jobs in various classes" and thus failed to establish that his employer regarded him as disabled under the ADA. 358 F.3d at 118. The court explained that even if the employer terminated the plaintiff "because of [its] concern that alcoholism impaired his ability to do his job rather than the job misconduct cited by the company, [the plaintiff] has not demonstrated that [the employer] considered him to be limited in his ability to work in a broad range of jobs required by the rigorous standards of the ADA." *Id.*; *see also Avery v. Omaha Pub. Power Dist.*, 187 F.3d 640 (8th Cir. 1999) (plaintiff-alcoholic failed to demonstrate employer "regarded him as unable to perform a class of jobs or broad range of jobs," but, "[a]t most, ... has shown that [employer] regarded him as unable to perform the single position of a licensed senior nuclear operator," which "does not constitute a substantial limitation in the major life activity of working"). Thus, in neglecting to sufficiently address the "broad range of jobs" element, Moore has further failed to demonstrate that Defendants regarded him as disabled.[27]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

---

[27] Defendants also argue that, even assuming Moore could have met his *prima facie* burden for his ADA claim, they had a legitimate, non-discriminatory reason for terminating him, which Moore has not shown to be a pretext for discrimination. R. Docs. 13-1 at 18-22; 21 at 2-5; 38 at 8-11. The Court agrees. After all, according to Defendants, Moore was terminated for his absence and poor job performance; there is no evidence that Defendants fired him because of his alcoholism; and he has not presented evidence demonstrating the falsity of the employers' explanation or that Defendants were motivated by any unlawful discriminatory animus. *See, e.g., Kitchen*, 343 F. Supp. 3d at 690-92. Nevertheless, the Court has chosen to focus its analysis on Moore's failure to demonstrate that he is disabled, or regarded as so, within the meaning of the ADA.

IT IS ORDERED that the Defendants' motion for summary judgment on Moore's disability discrimination claims under the ADA (R. Doc. 13.) is GRANTED, and Moore's claim for disability discrimination (R. Doc. 1.) is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 28th day of February, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE